647 So.2d 552 (1994)
Arrica DAVIS, et al., Plaintiffs-Appellees,
v.
STATE of Louisiana, DOTD, et al., Defendants-Appellants.
No. 94-308.
Court of Appeal of Louisiana, Third Circuit.
December 7, 1994.
Writ Denied January 27, 1995.
John Wyeth Scott, Alexandria, for Arrica Davis, et al.
Paul Boudreaux Jr., Alexandria, for State, thru DOTD, et al.
Thomas Overton Wells, Alexandria, for Alex. Orthopaedic Clinic.
*553 Before DOUCET, COOKS and DECUIR, JJ.
COOKS, Judge.
Jeanne Davis and her two minor children were travelling north on Louisiana Highway 107, just south of Pineville, Louisiana. At the same time, Abby Licata was traveling south on Highway 107. Davis' vehicle was struck head on when the car driven by Licata entered the northbound travel lane while attempting to pass a vehicle. Jeanne Davis and her daughter, Arrica, suffered serious injuries. Her daughter, Jeanne Alyce, suffered minor injuries. The State of Louisiana, through the Department of Transportation and Development (DOTD), was named as a defendant for its failure to create a no passing zone in a hazardous area. Plaintiffs settled with Abby Licata, leaving DOTD as the sole defendant at trial. The case was bifurcated and the liability issue was tried first. The trial court found Abby Licata sixty (60) percent and DOTD forty (40) percent at fault in causing the accident. This court affirmed the lower court's allocation of fault in Arrica Davis, et al. v. State of LouisianaDOTD, et al., No. 93-1078 (La.App. 3d Cir. 10/05/94), 642 So.2d 897. Trial on the damage aspect of the case was held on October 12, 1993. Subsequently, the trial court rendered the following awards:

A. JEANNE DAVIS:
 (1) Loss of past earnings $ 156,254.00
 (2) Loss of future earnings $ 909,534.00
 (3) Past medical expenses $ 190,499.00
 (4) Future medical expenses $ 65,000.00
 (5) General Damages $ 580,000.00
 _____________
 TOTAL $1,901,287.00
B. ARRICA DAVIS
 (1) Past medical $ 70,121.76
 (2) Future medical $ 75,000.00
 (3) General damages $ 150,000.00
 _____________
 TOTAL $ 295,121.76
C. JEANNE ALYCE DAVIS
 (1) Medical expenses $ 3,119.00
 (2) General damages $ 25,000.00
 _____________
 TOTAL $ 28,119.00

Since DOTD was only 40% liable, judgment was rendered against DOTD awarding Jeanne Davis $760,514.80, Arrica Davis $118,048.70, and Jeanne Alyce Davis $11,247.60, together with legal interest and all costs of the litigation.
DOTD timely perfected a suspensive appeal from this judgment asserting the awards made to each plaintiff were excessive; and, it was erroneously cast with all court costs. For the following reasons, we affirm.

QUANTUM

I. JEANNE DAVIS
DOTD argues the trial court's damage awards to Jeanne Davis were excessive. In brief, DOTD contends Jeanne suffered from a severe pre-existing psychiatric problem, for which she received psychiatric counseling up until the accident on September 22, 1990. It also cites numerous cases where lesser amounts were awarded for allegedly similar injuries.
The Louisiana Supreme Court in Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993), cert. denied, ___ U.S. ___, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994), thoroughly examined the standard for appellate review of general damage awards and stated as follows:
The theme that emerges from Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963) through Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976), and through Reck to the present case is that the discretion vested in the trier of fact is "great," and even vast, so that an appellate court should rarely disturb an award of general damages.... It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances *554 that the appellate court should increase or reduce the award.
In Reck v. Stevens, 373 So.2d 498 (La.1979), the Louisiana Supreme Court looked with disfavor on the use of award scales based on prior cases. The court stated "such a hypothetical scale of hypothetical awards cannot be used to determine whether or not this trier of fact has abused its discretion in the award to this particular plaintiff under the facts and circumstances peculiar to this case." Reck, at p. 500-501. Only after a determination of an abuse of discretion is a resort to prior awards appropriate. Youn, at p. 1260. After reviewing the record we find the medical evidence clearly supported the trial court's damage awards to Jeanne Davis.
At the time of the accident, Jeanne was 32 years old and employed as a registered nurse at St. Francis Cabrini Hospital. She sustained serious injuries as a result of the automobile accident. She suffered a fractured left and right femur; a fractured left ankle and left ulna; a fractured right patella; and numerous lacerations of the face and head. She remained comatose, in the intensive care unit, for approximately three weeks.
Dr. W. Stanley Foster treated Jeanne on the night of the accident performing multiple surgeries on her. Dr. Foster stated when attempting to put her knees back together he found there were pieces of bone and cartilage missing which resulted in incongruity and deformity of the knees. Both knees required screws and pins in order to secure the multiple fractures. A permanent plate was inserted in Jeanne's left elbow to align the fracture. Two months after the initial surgeries, Dr. Foster was forced to manipulate Jeanne's knees because internal scarring had bound them preventing any bending. Dr. Foster stated Jeanne's severe knee pain is permanent; and, she is suffering from arthritic spurring and calcification as a result of the injuries. She also has significant limitation of motion in both knees. Dr. Foster concluded Jeanne is orthopedically disabled from doing any work involving standing, walking, climbing, weight bearing, or movement. He stated, as a final prognosis, that Jeanne's physical condition and pain will increase because of traumatic arthritis requiring her to take anti-inflammatory medication the remainder of her life.
Dr. James Ralston, an ophthalmologist, also performed surgery on Jeanne in the emergency room on the night of the accident for five facial wounds. He stated she sustained "complicated complex laceration, left eyelid, with multiple lacerations involving the eyebrow, totalling 7.5 centimeters in length." Dr. Ralston testified the eyelid injury was so extensive he had to sew her eyelid together in a manner similar to how he performs skin grafts. Complications from the surgery include scarring, tightness of the eyelid, discomfort and some visual distortion. Dr. Ralston also stated it took over 100 sutures to close the wound to her forehead. As a result of eye injuries, she has an enlarged pupil; and her left eye no longer responds to light. Dr. Ralston also performed reconstructive surgery in an attempt to reduce the scars on Jeanne's face. Despite this surgery, a gap remains in Jeanne's left eyelid that prevents her from closing her eye, causing sleeplessness at night. Although Dr. Ralston believes Jeanne might benefit from several additional surgeries, he explained Jeanne's visual distortion is permanent and something she will have to learn to "live with."
Jeanne was hospitalized at Briarwood Day Hospital from mid-February until March 2, 1991 for treatment of psychiatric and emotional injuries. While she suffered from a pre-existing bi-polar disorder for which she had been hospitalized in the Spring of 1990, Dr. Lyn Goodin (Jeanne's treating psychiatrist) stated this pre-existing condition did not affect her work ability prior to the accident and she was functioning at a 80-85 percent level. After the accident her functional level dropped to 30 percent.
Dr. Goodin testified Jeanne suffered a severe head injury in the auto accident involving trauma, bruising and swelling of her brain. He attributes her present memory gaps to brain injury which he believes probably resulted from the accident trauma. According to Dr. Goodin, Jeanne suffered a period of depression in the hospital; and she constantly voiced concern about the extent of her injuries and her future ability to return *555 to work. Dr. Goodin treated Jeanne regularly following the accident; and, such treatment, he expects to render on a long term basis. Dr. Goodin confirmed Jeanne's psychiatric prognosis is poor. He anticipated her mental condition will worsen as her pain increases; and she will require psychiatric treatment for life. As a direct result of the severe physical and psychiatric injuries Jeanne sustained during the accident, Dr. Goodin concluded she is unable to return to her former job as an intensive care nurse. In fact, Dr. Goodin believes Jeanne is unable to perform any job because of her emotional instability and limited cognitive function. The treatment and care she received after the accident, Dr. Goodin stated, were related to the accident and not her pre-existing condition.
Dr. Richard Galloway, an expert in vocational rehabilitation, testified as a result of Jeanne's physical and psychological problems she is not employable. In his opinion, Jeanne is totally and permanently disabled. DOTD attempts to argue Jeanne's previous psychological problems warrant a reduction in the trial court's award. However, the record indicates her pre-existing psychiatric condition did not inhibit her ability to work as a nurse.
We cannot say the trial court's awards to Jeanne were excessively or shockingly high. Jeanne sustained permanent physical and mental injuries which have so affected her that she will suffer persistent pain and endure lasting emotional instability. Tragically, her career has ended; and the quality of her life has been altered permanently.
Counsel for plaintiffs argues the trial court's award to Jeanne Davis was inadequate. However, plaintiffs answered the appeal and assigned error only to the trial court's award of damages to Arrica Davis.[1] Whether the awards to Jeanne Davis are adequate has not been properly raised as an issue on appeal. Therefore this issue has not been preserved; and we are prevented from addressing it. Roszell v. National Union Fire Ins. Co., 602 So.2d 87 (La.App. 3d Cir.), writ denied, 605 So.2d 1365 (La.1992); Arrow Fence Co. v. DeFrancesch, 466 So.2d 631 (La.App. 5th Cir.1989).

II. ARRICA DAVIS
Arrica Davis, twelve years old at the time of the accident, suffered 14 fractures of the left leg, a fracture of the right scapular, a right hand injury and multiple abrasions. Arrica remained in traction for a month following the accident. She then was placed in a body cast well over a month until complications arose requiring that she reenter the hospital. A special cast was made for Arrica, and she was forced to use crutches because she could not support her weight on her left leg. She participated in a physical therapy program to improve the range of motion and increase the strength in her left leg. Arrica did not return to school for a year following the accident. From time to time, Arrica's knee continued to collapse causing her to fall; and she developed numbness and tingling down her lower left leg. Dr. Foster referred Arrica to Dr. Stephen Heinrich, a pediatric orthopedist. Dr. Heinrich discovered Arrica's kneecap had shifted to the back of the leg as a result of severe hyperextension. To prevent the knee from continuing to collapse, he recommended she wear a brace that locks and limits hyperextension. Dr. Heinrich stated Arrica's orthopaedic condition was permanent; and she could expect to wear a brace for the rest of her life. The brace will require adjustments and replacement parts every six months. According to Dr. Heinrich, Arrica will probably suffer increased pain and premature degenerative arthritis; *556 and, she will probably require knee replacement surgery by age 50.
Arrica's post-accident condition was marked by tantrums, outbursts, nightmares and anger directed primarily toward her mother. The conflict which resulted strained Arrica's relationship with her mother. Dr. Walter Litwin, a psychologist who treated Arrica, concluded Arrica suffered from "post traumatic stress disorder." She is emotionally labile, withdrawn, and much more aggressive. With continued treatment, in Dr. Litwin's opinion, Arrica's future mental prognosis is fair.
DOTD argues the damages awarded by the trial court to Arrica are excessive. Plaintiffs have also appealed, seeking an increase in the award. The trial court's damage award to Arrica is not abusively low or high. This award is not, in either direction, beyond that which a reasonable trier of fact could assess under the facts of this case. See Youn, supra., p. 1261. Therefore this court will not disturb the damage awards.

III. JEANNE ALYCE DAVIS
DOTD suggests the $25,000.00 award to Jeanne Alyce should be reduced to $5,000.00. No reasons are given to support its suggestion. After reviewing the record, we do not find the trial court's award to Jeanne Alyce was excessive. Although Jeanne Alyce suffered minor lacerations and soft tissue injuries, she was hospitalized for three days. She endured traumatic shock associated with the accident. She experienced the horror of being trapped inside a crushed car for nearly an hour with her mother (unconscious and bleeding profusely) and her older sister (severely injured and hysterical). Further, Jeanne Alyce has been deprived of her mother's care and affection.

COURT COSTS
DOTD contends the trial court abused its discretion in allocating all of the court costs to it. It points out that Abby Licata, the driver of the offending vehicle, was assessed a larger percentage of fault; and thus, DOTD argues, she should bear a portion of the costs.
LSA-C.C.P. art. 1920 provides:
"Unless the judgment provides otherwise, costs shall be paid by the party cast, and may be taxed by a rule to show cause. Except as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable."
Art. 1920 has been liberally interpreted as granting the trial court broad discretion in apportioning costs as it deems equitable. Lognion v. Calcasieu Parish Police Jury, 503 So.2d 1092 (La.App. 3d Cir.), writ denied, 507 So.2d 227 (La.1987). Although DOTD and Abby Licata were held at fault in causing the accident, we do not find the trial court abused its discretion by imposing costs only upon DOTD, particularly considering that DOTD was the sole defendant at trial.

DECREE
For the foregoing reasons, the judgment of the lower court is affirmed. All costs of this appeal are assessed against defendant-appellant, DOTD.
AFFIRMED.
NOTES
[1] Specifically, they asserted in paragraphs three and five:

3.
"plaintiffs/appellees desire to answer the appeal for the purpose of requesting the Third Circuit Court of Appeal to increase the recovery of Arrica Davis as certain elements of damages were omitted by oversight by the court regarding recovery of Arrica Davis ..."
5.
"... WHEREFORE, ARRICA DAVIS AND ALYCE DAVIS, MINORS REPRESENTED BY JEANNE M. DAVIS AND JEANNE M. DAVIS pray that the appeal of the State of Louisiana be denied; that plaintiffs-appellees be granted, pursuant to this Answer to Petition for Appeal, appeal seeking modification and revision of judgment for the sole purpose of increasing amount of award to Arrica Davis." (Emphasis added).